IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

WILLIE JAMES TERRELL JR.,        :
                                      :
             **Plaintiff,**    :
                                        :
             **v.**         :       **Case No. 5:17-cv-00441-MTT-CHW**
                                        :
**Corporal DIXON,** *et al.*,      :       **Proceedings Under 42 U.S.C. § 1983**
                                        :       **Before the U.S. Magistrate Judge**
             **Defendants.**   :
                                        :

## REPORT AND RECOMMENDATION

Before the Court is a motion for summary judgment filed by Defendants Dixon and Kitchens. (Doc. 46). Plaintiff failed to respond to this motion despite receiving repeated prompts from the Court to do so, and despite receiving two extensions of time. (Docs. 48, 49, 52). As discussed below, no evidence suggests that Plaintiff suffered from any objectively serious medical need or that the Defendants' conduct rose to the level of deliberate indifference. Accordingly, the Defendants are entitled to qualified immunity from Plaintiff's Eighth Amendment claims. It is therefore **RECOMMENDED** that the Defendants' motion for summary judgment be **GRANTED**.

Also before the Court is a motion to compel filed by Plaintiff Willie James Terrell Jr. (Doc. 55). For the reasons discussed below, Plaintiff's motion is **DENIED**.

## FACTS

Plaintiff alleges that he was assaulted by other prisoners on July 22, 2017, resulting in possible injuries to his chest, right elbow, and left hip, along with ensuing headaches, cuts, bruises, and a swollen ankle. (Compl., Doc. 1, p. 5). At a follow-up appointment with prison medical professionals at Washington State Prison on August 3, Plaintiff was referred for "Further

1

assessment for CT [and] xray of hip [and] elbow, [and for] evaluation of chest pain." (Doc. 46-9). In particular, Washington State Prison medical authorities wanted to rule out the possibility of any factures or internal bleeding. (Docs. 46-10, 46-11).

Accordingly, Plaintiff was transported to the Washington County Regional Medical Center ("WCRMC"), where he was admitted at around 1:15 PM on August 3, 2017. (Doc. 46-11, p. 3). There, three x-rays were taken of Plaintiff's elbow, which showed some soft-tissue swelling but no fractures or displacement of "fat pads." (Doc. 46-11, p. 14). Two x-rays were also taken of Plaintiff's pelvis, and they revealed intact bones, uniform and symmetrical joints, and normal soft-tissue outlines. (Doc. 46-11, p. 15). Finally, a chest x-ray showed normal heart size and vascular pattern, as well as normal "osseous structures" with regard to all visualized bones. (Doc. 46-11, p. 17). Two ribs — Plaintiff's "posterior first and second ribs" — "were not fully imaged" on the WCRMC chest x-ray. (*Id.*). No cranial imaging was conducted at the WCRMC, even though medical sources noted "some swelling in the occipital region of [Plaintiff] scalp" upon examination. (Doc. 46-11, p. 5).

Following Plaintiff's treatment at the WCRMC, Plaintiff was "Transfer[red] to Augusta University," (Doc. 46-11, p. 5), where CT imaging was available. *See* (Pl.'s Dep.) (Doc. 46-22, p. 8) ("At [the WCRMC], their CT scan didn't work") A CT scan of Plaintiff's head was "negative for any intracranial processes," and a scan of Plaintiff's neck was also "negative for any abnormality." (Doc. 46-16, p. 4). A second x-ray of Plaintiff's chest "rule[d] out broken ribs." (*Id.*). The record indicates that these medical images were obtained between 8:30 and 9:00 PM on the evening of August 3. (Doc. 14-16, pp. 6–10). Plaintiff was discharged from the Augusta University Medical Center around 10:00 PM, (Doc. 46-20, p. 1), and he returned to Washington

State Prison either late that night, (Doc. 46-22, p. 31), or early the next morning. (Doc. 46-21, p. 1). A medical intake note from Washington State Prison reads: "Inmate states he is fine." (*Id.*).

Throughout his treatment on August 3, Plaintiff claims that the Defendants attempted to interfere with his ability to obtain necessary medical imaging. At the WCRMC, for example, Plaintiff claims that the Defendants "didn't understand why I needed both …x-rays and a CT scan, and … that [I] was blowing the State's budget, and that I should refuse one or the other because it's too much radiation." (Pl.'s Dep.) (Doc. 46-22, p. 18). Later, at the August University Medical Center, Plaintiff claims that the Defendants "had a verbal disagreement with the medical staff" because the staff initially "told me they had to do the x-rays over." (*Id.*, pp. 9–10). Eventually, Augusta University medical staff opted "to [re]do the chest x-ray only," along with "a CT [scan] of [Plaintiff's] head down to my spine." (*Id.*, p. 12). Plaintiff claims that one physician "seemed upset that [the Defendants] weren't allowing [other] x-rays to be done and didn't want a CT" scan. (*Id.*). Plaintiff further claims that the Defendants expressed frustration that Plaintiff was "holding [them] up," because the Defendants "want[ed] to be home before five p.m." (*Id.*, p. 13).

When asked at his deposition how the Defendants' actions harmed him, Plaintiff answered that his hip continues to hurt due to a suspected hairline fracture, (Doc. 46-22, pp. 19–20), that he "might have [had] a fracture or some type of break in my arm [that] probably healed," (*Id.*, p. 20), and that he continues to suffer from pain in his head, neck, back and chest. (*Id.*, p. 43). According to Plaintiff, if the Defendants had allowed for adequate medical imaging, then Plaintiff "could have gotten medical treatment sooner," and in particular he "could have gotten [physical] therapy sooner." (*Id.*, p. 19).

### PLAINTIFF'S MOTION TO COMPEL

Plaintiff has filed a document titled "objection to Defendants['] irregularity in the handling of the deposition in conjunction with a motion to compel Defendants to submit Plaintiff's errata sheet changes." (Doc. 55). This motion is **DENIED**.

Rule 30(e) of the Federal Rules of Civil Procedure provides for a 30-day period in which a deponent may review his deposition transcript and make certain changes thereto. Plaintiff took advantage of this review period, *see* (Doc. 55, p. 2) ("Plaintiff's corrections made on 14 January"), and the Defendants have now provided Plaintiff's errata sheets. (Doc. 56-1, pp. 4–5). This Recommendation has given full consideration to Plaintiff's asserted errata.

Plaintiff appears to seek additional time in which to compare his deposition transcript with "the actual evidence [of] the original audiotaped recording of the oral examination." (Doc. 55, p. 3). This request is improper for two reasons. First, although Plaintiff's motion is dated February 6, 2019, Plaintiff did not deposit that motion in the mail until over two months later, in mid-April, 2019. (Doc. 55-1, p. 1). Based on this delay, it cannot be said that Plaintiff acted "promptly" after any errors or irregularities in his deposition became "known or, with reasonable diligence, could have been known." Fed. R. Civ. P. 32 (d)(4). Second, Plaintiff articulates no specific grounds to impugn the integrity of the transcription process, and Plaintiff's filings suggest that his motion is merely a dilatory tactic, or an attempted means of extended the Rule 30(e) review period for arguably impermissible purposes. *See, e.g.*, *Norelus v. Denny's*, *Inc.*, 628 F.3d 1270, 1281 (11th Cir. 2010) ("A deposition is not a take home examination'). Accordingly, and notwithstanding Plaintiff's objections, this Recommendation has considered Plaintiff's deposition testimony in evaluating the merits of the Defendant's motion for summary judgment.

4

### LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of informing the Court of the basis for its motion, and of citing "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that support summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In resolving motions for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014).

Although Plaintiff filed no response to Defendants' motion for summary judgment, summary judgment is not properly awarded by default. S*ee Trs. of Central Pension Fund of Int'l Union of Operating Eng'rs and Participating Emp'rs*, 374 F.3d at 1039. Nevertheless, by failing to respond to the Defendants' motion, Plaintiff has failed to rebut the Defendants' statement of undisputed material facts, triggering potential consequences under both the Federal Rules of Civil Procedure and this Court's Local Rules.

Federal Rule of Civil Procedure 56(e)(2) provides that if a party "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion." Rule 56(e)(2). This Court's Local Rule 56 similarly provides: "All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." Local Rule 56. Finally, Federal Rule of Civil Procedure 56(e)(3) provides that the Court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled

to" summary judgment. Rule 56(e)(3). *See also Urdaneta v. Wells Fargo Bank, N.A.*, 734 F. App'x 701, 704 (11th Cir. 2018). Accordingly, because the Defendants properly supported their factual assertions with specific citations to the record, and because Plaintiff failed to respond, the Defendants' facts may be accepted by the Court as undisputed.

### ANALYSIS

In addition to invoking the Prison Litigation Reform Act's limitation on compensatory and punitive damages absent a physical injury, 42 U.S.C. § 1997e(e), the Defendants move for summary judgment on two grounds: (1) failure to exhaust administrative remedies, and (2) qualified immunity. Eleventh Circuit precedent indicates that the Defendants forfeited their exhaustion arguments by failing to raise those arguments in their prior motion to dismiss. Nevertheless, during the period under review, no evidence suggests that Plaintiff suffered from an objectively serious medical need, or that the Defendants were deliberately indifferent to that need. Therefore, on grounds of qualified immunity, it is recommended that the Defendants' motion for summary judgment be granted.

### (1) Exhaustion of Administrative Remedies

The Defendants previously filed a motion to dismiss on the sole ground that Plaintiff failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). (Doc. 17). Under Eleventh Circuit precedent, "the exhaustion defense should be raised in a motion to dismiss under Rule 12(b)," and the defense is forfeited if a party "waits too long to raise the point." *Brooks v. Warden*, 706 F. App'x 965, 970 (11th Cir. 2017) (explaining that the defense is a "claim-processing rule").

This Court denied the Defendants' motion to dismiss on grounds of exhaustion because (a) Plaintiff alleged, in his response brief, that he was misled as to whether or not claims relating

to outside medical care were "grievable issues," and because (b) the Defendants failed to address these allegations by Plaintiff, and indeed they failed even to file a reply brief. *See* (Doc. 35, pp. 2–5), *rejecting in part* (Doc. 29).

Insofar as the Defendants now seek to relitigate, in their summary judgment motion, exhaustion-related issues which they failed adequately to litigate in their previous motion to dismiss, the Defendants' arguments are foreclosed by Federal Rule of Civil Procedure 12(g)(2), and by *Brooks*' application of that Rule in the context of exhaustion.

### (2) Qualified Immunity

Defendants have shown, however, that they are entitled to summary judgment on grounds of qualified immunity, as Plaintiff has failed to establish a genuine issue of material fact as to his deliberate indifference claims. To make out an Eighth Amendment claim for deliberate indifference to serious medical needs, Plaintiff must demonstrate an "objectively serious medical need," meaning a medical need that "if left unattended, poses a substantial risk of serious harm." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal punctuation omitted). Plaintiff must also show that the Defendants were "deliberately indifferent," meaning they (1) had subjective knowledge of the risk of serious harm, but (2) disregarded that risk, by (3) more than mere negligence. *Id.*, at 1245.

Plaintiff fails on both prongs of the deliberate indifference inquiry. As to the "serious medical need" prong, the objective evidence shows that Plaintiff suffered injuries during an altercation with a fellow prisoner on July 22, 2017. (Aff. of Dr. Aleta Gardner) (Doc. 46-8, pp. 1–2). Nearly two weeks later, on August 3, 2017, prison medical authorities referred Plaintiff for imaging of his head, elbow, hip, and chest to rule out the possibility of any internal bleeding, contusions or fractures. (*Id.*, p. 2). X-ray reports from the Washington County Regional Medical

7

Center revealed no abnormalities, apart from some soft tissue swelling around Plaintiff's elbow. (Doc. 46-11, p. 14). CT scans of Plaintiff's head and neck conducted at the Augusta University Medical Center similarly revealed no abnormalities, and a second x-ray of Plaintiff's chest confirmed that Plaintiff had no broken ribs. (Doc. 46-16, p. 4). While the record indicates that Plaintiff may have continued to suffer from some lingering swelling or minor discomfort, no evidence suggests that Plaintiff continued to suffer, nearly two weeks after his altercation, from any medical need that would "pose[] a substantial risk of serious harm" if left unattended. *Farrow*, 320 F.3d at 1243. *See also Booker v. Ervin*, 2019 WL 1085192 at *3 (S.D. Ga. Mar. 7, 2019) ("Cuts and bruises that require only minor treatment are not a serious medical need for purposes of Eighth Amendment claims"). Indeed, the record indicates that Plaintiff "state[d] he is fine" upon his return from the Augusta University Medical Center. (Doc. 46-21, p. 1). Accordingly, Plaintiff has failed to demonstrate that he suffered from an objectively serious medical need.

Additionally, even if Plaintiff's injuries were still objectively serious on August 3, Plaintiff would nevertheless fail under the second prong of the inquiry, because Plaintiff has failed to show that the Defendants were deliberately indifferent to his medical needs. Longstanding Eighth Amendment caselaw provides that deliberate indifference is adequately shown where "prison guards … intentionally deny[] or delay[] access to medical care or intentionally interfer[e] with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In this case, though, the record shows that (a) prison medical sources prescribed medical imaging of Plaintiff's head, elbow, hip, and chest, and that (b) multiple medical images were, in fact, obtained of each designated region of Plaintiff's body. *See* (Aff. of Dr. Aleta Gardner) (Doc. 46-8, pp. 1–2). While Plaintiff alleges that the Defendants argued with medical staff or attempted to pressure Plaintiff into reducing the number of medical images obtained, no evidence suggests that Plaintiff did not

8

receive any medical treatment that he should have received. *See* (*Id.*, p. 2) ("NP Francis and I did not request a CT scan of inmate Terrell's entire body'). Accordingly, Plaintiff has failed to show that the Defendants' conduct rose to the level of deliberate indifference.

In summary, the record, even when construed in the light most favorable to Plaintiff, fails to show that the Defendants were deliberately indifferent to any serious medical need. As a result, and because the record readily establishes that the Defendants were acting within the scope of their discretionary authority during the relevant period, the Defendants are entitled to qualified immunity from suit. *See, e.g.*, *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) ("Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate"). Therefore, on grounds of qualified immunity, it is recommended that the Defendants' motion for summary judgment be granted.

## CONCLUSION

After a careful review of the record, it is **RECOMMENDED** that the Defendants' motion for summary judgment (Doc. 46) be **GRANTED**. It is further **ORDERED** that Plaintiff's motion to compel (Doc. 55) is **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. The District Judge will make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to

challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 8th day of May, 2019.

s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge